Frye *v.* The Bank of Illinois.

WILLIAM FRYE, impleaded, &c., plaintiff in error, *v.* THE PRESIDENT, DIRECTORS & Co. OF THE BANK OF ILLINOIS *et al.*, defendants in error.

## *Error to Calhoun.*

Where a bill in Chancery was filed by certain companies or corporations, it was *held* that no other allegation that they were incorporated was necessary.

A defendant in a bill in Chancery brought by certain companies as corporations, suffered the bill to be taken as confessed : *Held,* that he thereby admitted that they were incorporated and had the capacity to sue.

When a chartered company seeks to enforce, in Equity, rights which do not ordinarily and necessarily belong to such corporations, it is necessary that they set forth and prove their authority to do the particular thing.

A defendant in Chancery, by failing to answer, only admits what is alleged in the bill, and the complainants would have been permitted to prove, had an answer been filed.

The rule as to parties to suits is wholly different in Chancery from what it is at Law. In Equity, a party in interest may always institute a suit in his own name, while at Law, he alone can sue in whom is vested the legal title.

It is erroneous to enter a decree in Chancery, that unless the defendant pay an uncertain and undefined amount of money by a specified time, he be foreclosed, &c., particularly where the debtor in fact has not been brought into Court and the precise indebtedness ascertained.

BILL IN CHANCERY, in the Calhoun Circuit Court, brought by the Bank of Illinois, for the use of David A. Smith and Samuel Dunlap, its assignees, with George W. Atchison, the Union Insurance Company and the Missouri Insurance Company of St. Louis, who sued for the use of the said Atchison and said Missouri Insurance Company, against John Shaw and William Frye, for the purpose of setting aside certain conveyances alleged to be fraudulent, &c.

At the September term, 1846, the bill was taken *pro confesso* as to Frye and an interlocutory decree entered that he be barred, &c. unless he pay the complainants by the first day of the next term. Subsequently Shaw filed an answer.

At the May term, 1847, Frye filed affidavits and entered a motion to set aside the interlocutory decree, and asked leave to file an answer then prepared. A counter affidavit was filed, and the Court refused to allow the motion. De-

crees were then entered setting aside certain conveyances, and ordering a sale of mortgaged lands, &c.

· Frye excepted to the decisions of the Court, and alone brings the cause into this Court by writ of error.

*E. Keating* and *H. W. Billings*, for the plaintiff in error.

1.   A party seeking the aid of a Court of Equity must show distinctly and unambiguously all the facts necessary to entitle him to that aid.   *Shepard* v. *Shepard*, 6 Conn. 37; *Wright* v. *Dame*, 22 Pick. 59; *Hobart* v. *Frisbie*, 5 Conn. 592; *Steele's heirs* v. *Mc Dowell*, 2 Bibb, 124; *Morrison's Exec'rs* v. *Hart*, ib. 6; *Lemaster* v. *Buckhart*, ib. 26.

2.   To enable a foreign corporation to maintain a bill of complaint, its corporate existence should be averred, and also its power to sue.   *Central Manufacturing Co.* v. *Hartshorne*, 3 Conn. 199; *Lewis* v. *Bank of Ky.*, 12 Ohio, 148-9-50; *Society Prop'n Gospel* v. *Young*, 2 N. H. 312; *School Dist.* v. *Blaisdell*, 6 do. 198; *Bank of Michigan* v. *Williams*, 5 Wend. 482.

3.   A corporation has no powers except such as are specially granted, and those that are necessary to carry into effect the powers so granted.   Angell & Ames on Corporations, 65, 66, 122, 192, 198; *N. Y. Fireman Ins. Co.* v. *Sturges*, 2 Cowen, 675, 676; *Same* v. *Ely*, ib. 699; *Salem Mill Dam Corporation* v. *Ropes*, 6 Pick. 32; 3 Barnwell & Alderson, 216; *McIntyre* v. *Preston*, decided at this term; Phillips on Ins. 205, 206;

· 4.   A final decree in Equity, or an interlocutory decree deciding the merits, cannot be pronounced until the parties to the bill and in interest are before the Court.   *Marshall* v. *Beverly*, 4 Peters' Cond. R. 660; *Conn.* v. *Penn.* ib. 718; *Dodge* v. *Griswold*, 8 N. H. 427; *Seagrave* v. *Edwards*, 3 Vesey, 372; *Gibson* v. *Wright*, 3 Munf. 94; *Shields* v. *Craig*, 1 Monroe, 72.

5.   An interlocutory decree for the payment of a sum of money should be for a sum certain.   *Wernwag* v. *Brown*, 3 Blackf. 458; *Downing* v. *Palmater*, 1 Monroe, 66; 2 Barb. & Har. Eq. Dig. 289, § 4.

6.  A decree *pro confesso* is like a default at law.  *Murphy* v. *American Life Ins. Co.* 25 Wend. 250 ; *Dunn* v. *Keegin,* 3 Scam. 297 ; *Clason* v. *Morris,* 10 Johns. 538 ; *Millspaugh* v. *McBride,* 7 Paige, 509.

7.  At the time of the rendition of the decree in this case, the charter of the Bank of Illinois was repealed ; the Bank went out of existence, March 5th, 1847   Laws of Ills. 1842-3, page 33, §7.  The decree was not rendered until May, 1847. The counsel of plaintiff in error insist that a decree could not be rendered in favor of a corporation not in existence, and the objection can be taken in this Court, as the law repealing the charter of the Bank was a public law.

*D. A. Smith,* for the defendants in error.

The Opinion of the Court was delivered by

TRUMBULL, J.   The defendants in error, who were complainants in the Court below, filed their bill against the plaintiffs in error and John Shaw for the purpose of setting aside as fraudulent, various conveyances by which Frye claimed certain real estate which Shaw had mortgaged to the complainants, and to subject the same to the payment of the amounts due complainants upon their said mortgages, alleging the insolvency of Shaw, &c.

The bill was taken *pro confesso,* against Frye at the return term of the process, and a decree entered, "that unless he pay the amounts due the complainants respectively on their mortgages and notes set forth in their bill, on or before the first day of the next term of this Court, that he be foreclosed of and from all equity of redemption of, and to said mortgaged premises."

Shaw, at the time of the entry of this decree, had not been brought into Court, but shortly after and before the next term he filed his answer admitting, substantially, the allegations of the bill.  Frye appeared at the next term and made application to file his answer, accompanied with affidavits in support of his motion to set aside the decree *pro confesso* of the previous term, but the Court denied the motion and en-

tered a final decree setting forth that Frye had failed to comply with the interlocutory decree passed against him, setting aside the various conveyances to Frye, and directing the mortgaged premises to be sold to satisfy the complainants respectively, in case the defendant Shaw did not discharge said indebtedness within five days from the entry of the decree.

Frye alone brings the cause to this Court, and has assigned numerous errors for the reversal of the decree.

The first which we deem it essential to notice is, that there is no allegation in the bill that the insurance companies suing as complainants were incorporated, or that they had any authority to maintain suits, or to take the notes and mortgage which constitute the foundation of their claims.

The Union and Missouri Insurance companies having sued as corporations, no other allegation that they were incorporated was necessary, (4 Blackf. 267,) and the plaintiff in error having suffered the bill to be taken as confessed against him, has thereby admitted that the said companies were incorporated, and also their capacity to sue. But although the right of a corporation to maintain suits and to exercise such other powers as are necessary and essential to its existence, and to carry out the objects of its creation will be presumed, unless denied or put in issue, yet when chartered companies seek to enforce in Equity, rights which do not ordinarily and necessarily belong to such corporations, it becomes necessary that they set forth and prove their authority to do the particular thing.  *McIntire v. Preston*, (*ante* 48.)

The bill alleges that John Shaw "executed to the Union Insurance Company his note for $1500, to the Missouri Insurance Company his note for $1500, the notes to said insurance companies being given for *money borrowed* of them by said Shaw," which were secured by mortgages, &c., but it contains no allegation of the power of said insurance companies under their charter to loan money upon mortgage security or otherwise, nor can we intend that the power to loan money is necessary to the existence and transaction of ordinary business of insurance companies.

The Court cannot, therefore, presume that the Union and Missouri Insurance Companies of St. Louis had such power, unless it is shown to exist by their Acts of incorporation, or necessarily or incidentally to arise from the exercise of some of the powers granted.

The fact that the bill was taken for confessed cannot help the case, because the defendant, by failing to answer, admits only such allegations as are contained in the bill, and the complainants would have been permitted to prove, had an answer been filed; and as the complainants would not have been allowed to prove any substantive facts not alleged in the bill in case an answer had been put in, they cannot insist that any such are admitted for want of an answer. 2 Bibb, 123.

So far as one of the complainants, the Bank of Illinois, is concerned, we might well assume that it had the power to loan money, even if not bound to take notice of its charter as a public Act, because such a power is essential to the transaction of the ordinary business of banks; but no such intendment can be made in favor of insurance companies. That such companies have the power to make insurances, to give credit for premiums and therefore to take notes, might be intended as essential to the advantageous management of their business, (2 Cowen, 699;) but the allegations in this bill expressly negative the idea that the notes and mortgage in this case were taken in the transaction of the usual business of insurance companies. The bill is, therefore, defective for want of the proper allegations to show that the Union and Missouri Insurance companies were authorized by their charters to make the loans to Shaw.

Another objection has also been taken to the bill, which is, that M'Donald, before whom some of the deeds alleged to be fraudulent were acknowledged, should have been made a party. We cannot see the propriety of making him a party to the suit. He has no interest in it, and to have made him a party for the purpose of requiring him to answer, where if the allegations of the bill be true, such answer must tend to his own infamy, would not be allowable. It is also objected that the charter of the Bank of

Illinois having expired during the pendency of the suit, no decree could be rendered in its favor. There was no necessity for making the Bank a party to the suit. It purports to sue for the use of Smith and Dunlap, the assignees, and as Equity always looks to the real party in interest, and allows such party to institute suits in his own name, notwithstanding the legal title may be in another, it would have been more in accordance with Chancery proceedings if the suit had originally been instituted in the name of the persons for whose use it purports to have been brought.

The rule as to parties is wholly different in Chancery from what it is at Law. In Equity, a party in interest may always institute a suit in his own name, while at Law he alone can sue in whom is vested the legal title. As the bill will have to be amended, and the charter of the Bank has expired, it would be advisable to insert the names of the persons for whose use the Bank sues, as one of the parties complainants, instead of attempting to maintain a suit for their benefit in the name of the Bank. It may also be proper to remark, that as one object of the bill is to set aside a deed from Frye to Smith, the latter should also be made a party to the suit.

So far as the bill has been objected to on the ground of multifariousness, we do not consider the objection tenable. Although the bill relates to various transactions, yet they are all in reference to the same subject matter, and so intimately connected that they may well be determined in one suit.

The plaintiff in error also insists that it was erroneous to enter a decree *pro confesso* against him, determining the merits of the case so far as he was concerned, before Shaw, the debtor, was before the Court. It may well be asked, how could Frye know what amount to pay complainants respectively before Shaw had been brought into Court, and the amount ascertained, or what right had the complainants to a decree against Frye foreclosing his right to redeem, before they had established their claims against Shaw? Except Shaw owed them, they could not attack Frye's title, and there

is an inconsistency in foreclosing Frye's right to redeem before complainants had established any right to foreclose. The bill does not state with certainty the amounts due the respective complainants. Nor are they ascertained by the decree against Frye, and yet he is barred of all equity of redemption in the mortgaged premises, unless he pays those unknown and unascertained amounts by the first day of the next term, up to which time no decree had been entered against Shaw. This was clearly erroneous. The bill might have been taken as confessed as against Frye at the first term, but there it should have been left till Shaw was brought into Court, and the amount due from him ascertained, when a final decree might have been entered, barring the equity of redemption of both the defendants, unless the money was paid by a certain day. It is that part of the interlocutory decree, confirmed as it subsequently was by a final decree, which foreclosed Frye's right of redemption, unless he paid an uncertain amount, before any proceedings were had against Shaw, that is objectionable. 3 Blackf. 457.

As the decree of the Circuit Court will have to be reversed and the bill amended, when Frye will have no opportunity to file his answer, it is unnecessary to determine whether Frye's application to set aside the decree *pro confesso* should have been allowed or not.

The decree of the Circuit Court is reversed with costs, and the cause remanded with leave to the complainants to amend their bill.

*Decree reversed.*